**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

NOV 03 2021

BY
DEPUTY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | UNDER SEAL |
| | § | |
| v. | § | No. 1:21-CR-_112_ |
| | § | (Judge Crone - Hawthorn) |
| BYRON A. MARSHALL | § | |
| a/k/a "Robert Griffin" | § | |
| a/k/a "Dr. Griffin" (1) | § | |
| TUNJI CAMPBELL a/k/a "Mike" (2) | § | |
| CHERYL A. ANDERSON (3) | § | |
| ASHLEY A. RHEA | § | |
| a/k/a "Ashley A. Johnson" (4) | § | |
| CHAUNTELL D. BROWN | § | |
| a/k/a "Juan Brown" (5) | § | |
| WILLIS REED (6) | § | |
| KALPEN D. PATEL (7) | § | |
| JONATHAN R. SHAVER (8) | § | |
| GINA ACOSTA (9) | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Count One

Violation: 18 U.S.C. § 371
(Conspiracy)

### A. INTRODUCTION

At all times relevant to this indictment:

1.  The United States Food and Drug Administration (FDA) is the federal agency charged with the responsibility of protecting the health and safety of the American public by ensuring, among other things, that drugs sold for administration to humans bear labeling containing true and accurate information. The FDA's

responsibilities include regulating the labeling and distributing of prescription drugs shipped or received in interstate commerce.

2.  Under the Food, Drug and Cosmetic Act (FDCA), the definition of a "drug" includes articles that are intended (1) for use in the diagnoses, cure, mitigation, treatment or prevention of disease in humans, and (2) to affect the structure or function of the human body. Due to toxicity and other potential harmful effects, certain drugs are not considered safe for use except under the supervision of a practitioner licensed by law to administer such drugs. These drugs are known as prescription drugs.

3.  Promethazine and promethazine-codeine cough syrup are prescription drugs approved by the FDA for distribution within the United States.

4.  Promethazine-codeine and similar promethazine-based cough syrups can have tranquilizing and euphoric effects when consumed at higher-than-recommended doses, especially when mixed with alcohol or drugs such as marihuana.

5.  Some popular music has glamorized drinking promethazine-codeine cough syrup for its mind-altering effects, and promethazine-codeine has become increasingly popular among recreational drug users in Southeast Texas and elsewhere. Promethazine-codeine cough syrup mixed with a soft drink is sometimes referred to as "syrup," "drank," or "lean."

6.  Promethazine-codeine cough syrup products vary by manufacturer in terms of viscosity, coloring, and taste. Manufacturers market their promethazine-codeine cough syrup with distinctive brand-name labeling.

7. Actavis Prometh VC With Codeine cough syrup is a prescription drug manufactured and distributed by Actavis Holdco US, Inc. (Actavis Holdco US, Inc. is a subsidiary of its parent company, TEVA Pharmaceuticals USA, Inc.). The Actavis logo is owned by Actavis Holdco US, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

8. Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Oral Solution is a prescription drug manufactured and distributed by Hi-Tech Pharmacal (now Akorn). The "Hi-Tech" name and logo are owned by Hi-Tech Pharmacal (now Akorn) and Akorn retains common law trademark rights to the "Hi-Tech" name and logo.

9. Wockhardt Promethazine Syrup Plain is a prescription drug manufactured and distributed by Wockhardt USA LLC. The "Wockhardt" name is a trademark owned by Wockhardt USA LLC and registered in the principal registry in the United States Patent and Trademark Office.

10. PAR Promethazine VC with Codeine Oral Solution is a prescription drug manufactured and distributed by Par Pharmaceutical Companies, Inc. (Par Pharmaceutical Companies, Inc. is a subsidiary of its parent company, Endo International). The "PAR" name and logo are trademarks owned by Par Pharmaceutical Companies, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

11. Qualitest Promethazine DM Syrup is a prescription drug manufactured and distributed by Generics Bidco I, LLC, doing business as, Qualitest Pharmaceuticals, Inc. (Generics Bidco I, LLC, doing business as, Qualitest Pharmaceuticals, Inc., is a

subsidiary of its parent company Endo International). The "Qualitest" name and brown/white stripe are trademarks owned by Generics Bidco I, LLC, doing business as Qualitest Pharmaceuticals, Inc., and registered in the principal registry in the United States Patent and Trademark Office.

12. Tris Pharma Promethazine Hydrochloride and Codeine Phosphate Oral Solution is a prescription drug manufactured and distributed by Tris Pharma, Inc. The "Tris Pharma" name and "Tris" logo are trademarks owned by Tris Pharma, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

13. Amneal Promthazine HCI and Codeine Phosphate Syrup is a prescription drug manufactured and distributed by Amneal Pharmaceuticals, LLC. The "Amneal" name and script logo(s) are trademarks owned by Amneal Pharmaceuticals, LLC and registered in the principal registry in the United States Patent and Trademark Office.

14. The FDCA regulates the importation, delivery, distribution and receipt of drugs in interstate commerce. Under the FDCA, a drug is deemed misbranded if its labeling is false or misleading in any particular manner. A drug is also deemed to be counterfeit if it bears a trademark without the authorization of the registrant of the trademark. The FDCA prohibits the introduction or delivery for introduction into interstate commerce of any misbranded drug.

### B. PERSONS AND ENTITIES

15. **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin" organized and led a drug trafficking organization (the Marshall DTO) based in Houston, Texas.

16. **Tunji Campbell**, a/k/a "Mike," was a principal partner in the Marshall DTO. Campbell functioned as a facilitator and spokesperson for the Marshall DTO.

17. **Cheryl A. Anderson** was a principal partner in the Marshall DTO. Anderson functioned as an organizer. Anderson also operated an alleged business known as A+ Accounting & Bookkeeping that was utilized by the Marshall DTO.

18. **Ashley A. Rhea**, a/k/a "Ashley A. Johnson," was a principal partner in the Marshall DTO. Rhea joined the organization after Campbell and Anderson and eventually assumed a leadership role.

19. **Chauntell D. Brown**, a/k/a "Juan Brown," operated a packaging business called AB Packaging Solutions LLC. Brown was a facilitator and investor in the DTO.

20. **Woodfield Pharmaceutical LLC**, a/k/a "WDPrx," a/k/a "Woodfield," is a pharmaceutical business based in Boca Raton, Florida, with a manufacturing facility at 10863 Rockley Road in Houston, Texas. Woodfield holds itself out as a contract manufacturing organization specializing in liquid solutions and offering pharmaceutical outsourcing services including research and development, commercial manufacturing, regulatory support, packaging, and labeling.

21. **Willis Reed** was Woodfield's Director of Technical Operations from in or about April 2015 until January 2019.

22. **Kalpen D. Patel** was Woodfield's Research and Development Manager from in or about April 2014 until January 2019. In that role, Patel reported to Reed and supervised Woodfield's chemical formulation development, optimization, and scale-up

activities for clients. In January 2019, Patel replaced Reed as Woodfield's Director of Technical Operations.

23.     **Jonathan R. Shaver** was Woodfield's Production Manager. Shaver reported to Reed and Patel during their respective tenures as Director of Operations.

24.     **Gina Acosta** was the Packaging Supervisor for Woodfield. Acosta reported to Shaver.

### C. THE CONSPIRACY

25.     Beginning in or about April 2014, the exact date being unknown to the Grand Jury, and continuing thereafter until in or about August 2021, the exact date being unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," **Tunji Campbell**, a/k/a "Mike," **Cheryl A. Anderson, Ashley A. Rhea**, a/k/a "Ashley A. Johnson," **Chauntell D. Brown**, a/k/a "Juan Brown," **Willis Reed, Kalpen D. Patel, Jonathan R. Shaver**, and **Gina Acosta**, defendants, did willfully and knowingly conspire and agree with each other and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely, to violate the Food, Drug, and Cosmetic Act with intent to defraud and mislead and cause the introduction, and delivery for introduction, of misbranded drugs into interstate commerce in violation of 21 U.S.C. § 331(a) and (k), and to traffic and attempt to traffic in counterfeit drugs in violation of 18 U.S.C. § 2320(a)(4).

### D. OBJECTS OF THE CONSPIRACY

The objectives of the conspiracy varied depending upon the participant. The core objective for all participants was to enrich themselves through the distribution and

trafficking of misbranded and counterfeit drugs, namely, promethazine-based cough syrup.

### E. MANNER AND MEANS OF THE CONSPIRACY

26. The manner and means by which this conspiracy was carried out included the following:

   a. It was part of the conspiracy that **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," and **Tunji Campbell**, a/k/a "Mike," organized and led a drug trafficking organization (the Marshall DTO) based in Houston, Texas.

   b. It was part of the conspiracy that **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," and **Tunji Campbell**, a/k/a "Mike," partnered with Woodfield Pharmaceutical LLC, a/k/a "WDPrx," a/k/a "Woodfield," including its employees and facilities, for assistance with the development, production, and delivery of misbranded and counterfeit promethazine-codeine cough syrup.

   c. It was part of the conspiracy that **Willis Reed** and **Kalpen D. Patel** assisted in the formulation development, optimization, and scale-up of misbranded and counterfeit promethazine-codeine cough syrup for the Marshall DTO.

   d. It was part of the conspiracy that **Jonathan R. Shaver** and **Gina Acosta** assisted with the production, packaging, and distribution of misbranded and counterfeit promethazine-codeine cough syrup for the Marshall DTO.

    e. It was part of the conspiracy that **Chauntell D. Brown**, a/k/a "Juan Brown," facilitated the acquisition of counterfeit labels to be placed on bottles of misbranded promethazine syrup for the Marshall DTO.

    f. It was part of the conspiracy that **Cheryl A. Anderson** and **Ashley A. Rhea**, a/k/a "Ashley A. Johnson," facilitated the acquisition and distribution of misbranded and counterfeit promethazine-codeine cough syrup for the Marshall DTO.

### OVERT ACTS

27. In furtherance of the conspiracy and to affect the objects thereof, the defendants and coconspirators performed or caused the following overt acts, among others, in the Eastern District of Texas and elsewhere:

    a. On September 23, 2015, a coconspirator used an automobile to transport 32 pints of unmarked promethazine syrup in Liberty County, Texas.

    b. On April 19, 2016, **Tunji Campbell**, a/k/a "Mike" (**Campbell**) mailed 36 pints of unmarked promethazine syrup from League City, Texas to Miami, Florida.

    c. On January 11, 2017, a coconspirator used an automobile to transport 16 pints of promethazine syrup in Bossier Parish, Louisiana. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

    d. On March 8, 2017, **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin" (**Marshall**) sold 64 pints of promethazine syrup to a cooperating

witness in Houston, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

e. On May 4, 2017, **Marshall** sold 96 pints of promethazine syrup to a cooperating witness in Beaumont, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

f. On July 20, 2017, **Willis Reed (Reed)** and **Jonathan R. Shaver (Shaver)** met and discussed the storage of promethazine for **Marshall** and **Campbell**.

g. On July 20, 2017, **Reed** met with **Kalpen D. Patel (Patel)** and discussed the reverse engineering and formulation of promethazine syrup.

h. On July 21, 2017, **Reed** met with **Chauntell D. Brown**, a/k/a "Juan Brown" **(Brown)** regarding the delivery of counterfeit labels to Woodfield.

i. On July 21, 2017, **Ashley A. Rhea**, "a/k/a Ashley A. Johnson" **(Rhea)** mailed 16 pints of promethazine syrup from Pearland, Texas to Cleveland, Ohio. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

j. On July 25, 2017, **Marshall** and **Reed** met and discussed payments for products and services provided by Woodfield for the Marshall DTO.

k. On August 2, 2017, **Marshall** and **Reed** met to coordinate the pick-up of promethazine syrup from the Woodfield Pharmaceutical LLC manufacturing facility at 10863 Rockley Road in Houston (the Woodfield Pharmaceutical LLC manufacturing facility).

l.  On August 22, 2017, **Marshall** sold 24 pints of promethazine syrup to a cooperating witness in Beaumont, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

m. On August 23, 2017, coconspirators attempted to transport 20 pints of promethazine syrup to San Antonio, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

n.  On August 24, 2017, **Cheryl A. Anderson (Anderson)** attempted to transport 226 pints of promethazine syrup to San Antonio, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

o.  On October 21, 2017, a coconspirator used an automobile to transport 319 pints of promethazine syrup in Freestone County, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

p.  On January 5, 2018, **Marshall** provided a sample of promethazine syrup to a cooperating witness in Houston, Texas.

q.  On May 24, 2019, **Brown** delivered counterfeit labels to **Campbell**.

r.  On April 30, 2020, coconspirators used an automobile to transport 336 pints of promethazine syrup in Liberty County, Texas. The bottles bore counterfeit "Wockhardt Promethazine Syrup Plain" labels.

s.  On July 13-14, 2020, the Marshall DTO produced a promotional video inside the Woodfield Pharmaceutical LLC manufacturing facility.

t. On December 15, 2020, and continuing into the morning of December 16, 2020, coconspirators inside the Woodfield Pharmaceutical LLC bottled and packaged promethazine syrup for distribution by the Marshall DTO.

u. On December 16, 2020, coconspirators utilized a rental truck to pick-up the bottled and packaged promethazine syrup from the loading dock behind the Woodfield Pharmaceutical LLC manufacturing facility.

v. On January 26, 2021, a coconspirator used an automobile to transport 11 bottles of promethazine syrup and $11,191 in U.S. currency in Liberty County, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

w. On February 22, 2021, at approximately 12:33 p.m., **Marshall** hand-delivered an envelope containing cash to **Gina Acosta** at the Woodfield Pharmaceutical LLC manufacturing facility at 10863 Rockley Road in Houston, Texas.

x. On February 22, 2021, at approximately 1:00 p.m., Woodfield employees staged 7 55-gallon drums near the loading dock of the Woodfield Pharmaceutical LLC manufacturing facility.

y. On February 22, 2021, at approximately 3:36 p.m., a coconspirator driving a rental truck arrived at the loading dock behind the Woodfield Pharmaceutical LLC manufacturing facility, and coconspirators loaded the 7 55-gallon drums into the rental truck.

z. On February 22, 2021, at approximately 4:30 p.m., a coconspirator drove the rental truck to the Marshall DTO storage facility located at 5041 Spencer Highway in Pasadena, Texas.

aa. On February 22, 2021, at approximately 4:58 p.m., **Marshall** and **Campbell** arrived at the storage facility located at the storage facility and, together with the rental truck driver, off-loaded the 7 55-gallon drums into the Marshall DTO storage facility.

All in violation of 18 U.S.C. § 371.

### Count Two

> Violation: 18 U.S.C. § 2320(a)(4)
> (Trafficking in Drugs With Counterfeit Mark)

28. From in or about April 2014, the exact date being unknown to the Grand Jury, and continuing thereafter until in or about August 2021, the exact date being unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," **Tunji Campbell**, a/k/a "Mike," **Cheryl A. Anderson, Ashley A. Rhea**, a/k/a "Ashley A. Johnson," **Chauntell D. Brown**, a/k/a "Juan Brown," **Willis Reed, Kalpen D. Patel, Jonathan R. Shaver**, and **Gina Acosta**, defendants, did intentionally traffic and attempt to traffic in a drug and knowingly use a counterfeit mark on and in connection with such drug.

In violation of 18 U.S.C. §§ 2320(a)(4) and 2.

## Count Three

Violation: 18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering)

29. From in or about April 2014, and continuing through in or about August 2021, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," **Tunji Campbell**, a/k/a "Mike," **Cheryl A. Anderson**, **Ashley A. Rhea**, a/k/a "Ashley A. Johnson," **Chauntell D. Brown**, a/k/a "Juan Brown," **Willis Reed**, **Kalpen D. Patel**, **Jonathan R. Shaver**, and **Gina Acosta**, along with others, both known and unknown to the grand jury, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the grand jury, to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 1957, that is:

    a.    to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to traffic in counterfeit drugs, a violation of 18 U.S.C. § 2320, with the intent to promote the carrying on of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i);

    b.    to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to traffic in counterfeit drugs, a violation of 18 U.S.C. § 2320, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such

    financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

 c. to knowingly engage and attempt to engage, in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, and such property having been derived from a specified unlawful activity, that is, conspiracy to traffic in counterfeit drugs, a violation of 18 U.S.C. § 2320, in violation of 18 U.S.C. § 1957.

All in violation of 18 U.S.C. § 1956(h).

## NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE

18 U.S.C. §§ 982(a)(1) and 2323

As a result of committing the offenses as alleged in this Indictment, defendants shall forfeit to the United States pursuant to 18 U.S.C. §§ 982(a)(1) and 2323 any and all property, real or personal: used or intended to be used in any manner or part to commit or facilitate the commission of the offense; involved in or traceable to property involved in the offense, including proceeds obtained directly or indirectly from the offense; any counterfeit materials; and the following:

### Cash Proceeds

A sum of money equal to $52,736,000.00 in United States currency, and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by defendants as a result of the offenses alleged in this Indictment, for which the defendants are personally liable.

### Substitute Assets

If any property subject to forfeiture, as a result of any act or omission by defendants:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with a third party;
(c) has been placed beyond the jurisdiction of the court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant up to the value of the above forfeitable property, including but not limited to all property, both real and personal, owned by defendant.

By virtue of the commission of the felony offenses charged in this Indictment, any and all interest defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1) and 18 U.S.C. § 2323.

A TRUE BILL

_____
GRAND JURY FOREPERSON

NICHOLAS J. GANJEI
ACTING UNITED STATES ATTORNEY

_____       Date  11/3/2021
JOHN B. ROSS
Assistant United States Attorney

Indictment – Page 15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | **UNDER SEAL** |
| v. | § § | No. 1:21-CR-**112** |
| | | (Judge _____ ) |
| BYRON A. MARSHALL | § | |
| a/k/a "Robert Griffin" | § | |
| a/k/a "Dr. Griffin" (1) | § | |
| TUNJI CAMPBELL a/k/a "Mike" (2) | § | |
| CHERYL A. ANDERSON (3) | § | |
| ASHLEY A. RHEA | § | |
| a/k/a "Ashley A. Johnson" (4) | § | |
| CHAUNTELL D. BROWN | § | |
| a/k/a "Juan Brown" (5) | § | |
| WILLIS REED (6) | § | |
| KALPEN D. PATEL (7) | § | |
| JONATHAN R. SHAVER (8) | § | |
| GINA ACOSTA (9) | § | |

## NOTICE OF PENALTY

### Count One

Violation: 18 U.S.C. § 371

Penalty: Imprisonment of not more than five (5) years, a fine not to exceed $250,000, or both imprisonment and a fine, and a term of supervised release of not more than three (3) years.

Special Assessment: $ 100.00

### Count Two

Violation: 18 U.S.C. § 2320(a)(4) and (b)(3)(A)

Penalty: Imprisonment of not more than twenty (20) years, a fine

Notice of Penalty-Page 1

|  |  |
|---|---|
|  | not to exceed $5,000,000, or both imprisonment and a fine, and a term of supervised release of not more than three (3) years. |
| Special Assessment: | $ 100.00 |

## Count Three

|  |  |
|---|---|
| Violation: | 18 U.S.C. § 1956(h) |
| Penalty: | Imprisonment of not more than twenty (20) years, a fine not to exceed $500,000, or twice the value of the property involved in the transaction, whichever is greater, or both imprisonment and a fine, and supervised release of not more than 3 years. |
| Special Assessment: | $ 100.00 |