FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

AUG - 3 2022

BY
DEPUTY_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:21-CR-112 |
| | § | (Judge Marcia Crone) |
| BYRON A. MARSHALL | § | |
| a/k/a "Robert Griffin" | § | |
| a/k/a "Dr. Griffin," a/k/a "Doc" (1) | § | |
| TUNJI CAMPBELL | § | |
| a/k/a "Michael Duke," a/k/a "Mike" (2) | § | |
| CHERYL A. ANDERSON | § | |
| a/k/a "Angela Thomas" (3) | § | |
| ASHLEY A. RHEA | § | |
| a/k/a Ashley A. Johnson (4) | § | |
| CHAUNTELL D. BROWN | § | |
| a/k/a "Juan Brown" (5) | § | |
| WILLIS REED (6) | § | |
| KALPEN D. PATEL (7) | § | |
| JONATHAN R. SHAVER (8) | § | |
| GINA ACOSTA (9) | § | |
| ADAM P. RUNSDORF (10) | § | |
| MARIA ANZURES-CAMARENA (11) | § | |

## THIRD SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Count One

Violation: 18 U.S.C. § 371
(Conspiracy)

#### A. INTRODUCTION

At all times relevant to this indictment:

1.      The United States Food and Drug Administration (FDA) is the federal

agency charged with the responsibility of protecting the health and safety of the

Indictment – Page 1

American public by ensuring, among other things, that drugs sold for administration to humans bear labeling containing true and accurate information. The FDA's responsibilities include regulating the labeling and distributing of drugs shipped or received in interstate commerce.

2.      Under the Food, Drug and Cosmetic Act (FDCA), the definition of a "drug" includes articles that are intended (1) for use in the diagnoses, cure, mitigation, treatment or prevention of disease in humans, and (2) to affect the structure or function of the human body. Due to toxicity and other potential harmful effects, certain drugs are not considered safe for use except under the supervision of a practitioner licensed by law to administer such drugs. These drugs are known as prescription drugs.

3.      Prescription cough syrups commonly contain Promethazine, Promethazine with Codeine, Promethazine with Dextromethorphan, and Dextromethorphan with Pseudoephedrine. These cough syrups are approved by the FDA for distribution only under the supervision of a practitioner licensed by law to administer such drugs within the United States. Over-the-counter cough syrups commonly contain lower concentrations of Dextromethorphan and Pseudoephedrine. Promethazine, Codeine, Dextromethorphan, and Pseudoephedrine are "drugs" within the meaning of the FDCA, and the FDA regulates them.

4.      Cough syrups can produce tranquilizing and euphoric effects when consumed at higher-than-recommended doses. Popular music has glamorized drinking cough syrup for its intoxicating effects, and certain brands have become popular among recreational drug users across the United States. Cough syrup mixed with a soft drink is

sometimes referred to as "syrup," "drank," or "lean." Cough syrups vary by brand in terms of coloring, taste, and viscosity.

5.      Manufacturers identify their brands with labels that are marked with their trademarked name and logo:

a.  Actavis Prometh VC With Codeine cough syrup is a prescription drug manufactured and distributed by Actavis Holdco US, Inc. (Actavis Holdco US, Inc. is a subsidiary of its parent company, TEVA Pharmaceuticals USA, Inc.). The Actavis logo is owned by Actavis Holdco US, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

b.  Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Oral Solution is a prescription drug manufactured and distributed by Hi-Tech Pharmacal (now Akorn). The "Hi-Tech" name and logo are owned by Hi-Tech Pharmacal (now Akorn) and Akorn retains common law trademark rights to the "Hi-Tech" name and logo.

c.  Wockhardt Promethazine Syrup Plain is a prescription drug manufactured and distributed by Wockhardt USA LLC. The "Wockhardt" name is a trademark owned by Wockhardt USA LLC and registered in the principal registry in the United States Patent and Trademark Office.

d.  PAR Promethazine VC with Codeine Oral Solution is a prescription drug manufactured and distributed by Par Pharmaceutical Companies, Inc. (Par Pharmaceutical Companies, Inc. is a subsidiary of its parent company, Endo International).   The "PAR" name and logo are trademarks owned by Par

Pharmaceutical Companies, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

e.   Qualitest Promethazine DM Syrup is a prescription drug manufactured and distributed by Generics Bidco I, LLC, doing business as, Qualitest Pharmaceuticals, Inc. (Generics Bidco I, LLC, doing business as, Qualitest Pharmaceuticals, Inc., is a subsidiary of its parent company Endo International). The "Qualitest" name and brown/white stripe are trademarks owned by Generics Bidco I, LLC, doing business as Qualitest Pharmaceuticals, Inc., and registered in the principal registry in the United States Patent and Trademark Office.

f.   Tris Pharma Promethazine Hydrochloride and Codeine Phosphate Oral Solution is a prescription drug manufactured and distributed by Tris Pharma, Inc. The "Tris Pharma" name and "Tris" logo are trademarks owned by Tris Pharma, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

g.   Amneal Promthazine HCl and Codeine Phosphate Syrup is a prescription drug manufactured and distributed by Amneal Pharmaceuticals, LLC. The "Amneal" name and script logo(s) are trademarks owned by Amneal Pharmaceuticals, LLC and registered in the principal registry in the United States Patent and Trademark Office.

6.      The FDCA regulates the importation, delivery, distribution and receipt of drugs in interstate commerce. Under the FDCA, a drug is deemed misbranded if its labeling is false or misleading in any particular manner. A drug is also deemed to be

counterfeit if it bears a trademark without the authorization of the registrant of the trademark. The FDCA prohibits the introduction or delivery for introduction into interstate commerce of any misbranded drug.

## B. PERSONS AND ENTITIES

7.     **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin, " a/k/a "Doc," organized and led a drug trafficking organization (the Marshall DTO) based in Houston, Texas.

8.     **Tunji Campbell**, a/k/a "Michael Duke," a/k/a "Mike," was a principal partner in the Marshall DTO. Campbell functioned as a facilitator and spokesperson for the Marshall DTO.

9.     **Cheryl A. Anderson**, a/k/a "Angela Thomas," was a principal partner in the Marshall DTO. Anderson functioned as an organizer. Anderson also operated an alleged business known as A+ Accounting & Bookkeeping that was utilized by the Marshall DTO.

10.     **Ashley A. Rhea**, a/k/a "Ashley A. Johnson," was a principal partner in the Marshall DTO. Rhea joined the organization after Campbell and Anderson and eventually assumed a leadership role.

11.     **Chauntell D. Brown**, a/k/a "Juan Brown," operated a packaging business called AB Packaging Solutions LLC. Brown was an investor in the DTO and provided counterfeit labels and supplies to it.

12.     Woodfield Pharmaceutical LLC, a/k/a Woodfield (hereinafter "Woodfield Pharmaceutical" or "Woodfield"), is a pharmaceutical business based in Boca Raton,

Florida, with a manufacturing facility at 10863 Rockley Road in Houston, Texas. Woodfield holds itself out as a contract manufacturing organization specializing in liquid solutions and offering pharmaceutical outsourcing services including research and development, commercial manufacturing, regulatory support, packaging, and labeling.

13.    **Adam P. Runsdorf** is the owner and president of Woodfield.

14.    **Willis Reed** was the Director of Technical Operations at Woodfield's Houston manufacturing facility from in or about April 2015 until January 2019.

15.    **Kalpen D. Patel** was Woodfield's Research and Development Manager from in or about April 2014 until January 2019. In that role, Patel reported to Reed and supervised Woodfield's chemical formulation development, optimization, and scale-up activities for clients. In January 2019, Patel replaced Reed as Woodfield's Director of Technical Operations.

16.    **Jonathan R. Shaver** was Woodfield's Production Manager. Shaver reported to Reed and Patel during their respective tenures as Director of Operations.

17.    **Gina Acosta** was the Packaging Supervisor for Woodfield. Acosta reported to Shaver.

18.    **Maria Anzures-Camarena** was a packaging specialist for Woodfield. Anzures-Camarena reported to Acosta.

### C. THE CONSPIRACY

27.    Beginning in or about April 2014, the exact date being unknown to the Grand Jury, and continuing thereafter until in or about August 2021, the exact date being unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, **Byron A.**

**Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," a/k/a "Doc," **Tunji Campbell**, a/k/a "Michael Duke," a/k/a "Mike," **Cheryl A. Anderson**, a/k/a "Angela Thomas," **Ashley A. Rhea**, a/k/a "Ashley A. Johnson," **Chauntell D. Brown**, a/k/a "Juan Brown," **Willis Reed**, **Kalpen D. Patel**, **Jonathan R. Shaver**, **Gina Acosta**, **Adam P. Runsdorf**, and **Maria Anzures-Camarena**, defendants, did willfully and knowingly conspire and agree with each other and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely, to violate the Food, Drug, and Cosmetic Act with intent to defraud and mislead and cause the introduction, and delivery for introduction, of misbranded drugs into interstate commerce in violation of 21 U.S.C. § 331(a) and (k), and to traffic and attempt to traffic in counterfeit drugs in violation of 18 U.S.C. § 2320(a)(4).

### D. OBJECTS OF THE CONSPIRACY

The objectives of the conspiracy varied depending upon the participant. The core objective for all participants was to enrich themselves through the distribution and trafficking of misbranded and counterfeit drugs, namely, cough syrup.

### E. MANNER AND MEANS OF THE CONSPIRACY

28.   The manner and means by which this conspiracy was carried out included the following:

  a.  It was part of the conspiracy that **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," a/k/a "Doc," and **Tunji Campbell**, a/k/a "Michael Duke," a/k/a "Mike," organized and led a drug trafficking organization (the Marshall DTO) based in Houston, Texas.

b. It was part of the conspiracy that **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," a/k/a "Doc," and **Tunji Campbell**, a/k/a "Mike," partnered with Woodfield Pharmaceutical LLC, a/k/a "Woodfield," including its employees and facilities, for assistance with the development, production, and delivery of misbranded and counterfeit cough syrup.

c. It was part of the conspiracy that **Willis Reed** and **Kalpen D. Patel** assisted in the formulation development, optimization, and scale-up of misbranded and counterfeit cough syrup for the Marshall DTO.

d. It was part of the conspiracy that **Jonathan R. Shaver** and **Gina Acosta** assisted with the production, packaging, and distribution of misbranded and counterfeit cough syrup for the Marshall DTO.

e. It was part of the conspiracy that **Chauntell D. Brown**, a/k/a "Juan Brown," facilitated the acquisition of counterfeit labels to be placed on bottles of misbranded cough syrup for the Marshall DTO.

f. It was part of the conspiracy that **Cheryl A. Anderson** and **Ashley A. Rhea**, a/k/a "Ashley A. Johnson," facilitated the acquisition and distribution of misbranded and counterfeit cough syrup for the Marshall DTO.

### OVERT ACTS

29.     In furtherance of the conspiracy and to affect the objects thereof, the defendants and coconspirators performed or caused the following overt acts, among

Indictment – Page 8

others, in the Eastern District of Texas and elsewhere:

    a.  On or about May 26, 2015, **Willis Reed** (**Reed**) procured 10 kilograms of Promethazine for the Marshall DTO.

    b.  On September 23, 2015, a coconspirator used an automobile to transport 32 one-pint bottles of unlabeled purple cough syrup in Liberty County, Texas.

    c.  On April 19, 2016, **Tunji Campbell**, a/k/a "Michael Duke," a/k/a "Mike" (**Campbell**) mailed 36 one-pint bottles of unlabeled purple cough syrup from League City, Texas to Miami, Florida.

    d.  On January 11, 2017, a coconspirator used an automobile to transport 32 eight-ounce bottles of purple cough syrup in Bossier Parish, Louisiana. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

    e.  On March 8, 2017, **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," a/k/a "Doc" (**Marshall**) sold 128 eight-ounce bottles of purple cough syrup to a cooperating witness in Houston, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

    f.  On May 4, 2017, **Marshall** sold 192 eight-ounce bottles of purple cough syrup to a cooperating witness in Beaumont, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

    g.  On July 20, 2017, **Reed** and **Kalpen D. Patel** (**Patel**) discussed **Marshall**'s request for adjustments to the taste, color, and viscosity of the red cough syrup they were developing.

h. On July 21, 2017, **Ashley A. Rhea**, "a/k/a Ashley A. Johnson" (**Rhea**) mailed 32 eight-ounce bottles of purple cough syrup from Pearland, Texas to Cleveland, Ohio. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

i. On July 25, 2017, **Marshall** and **Reed** discussed **Marshall**'s payment of $75,000 and **Marshall**'s need to have the product as soon as possible in order to "hand label."

j. On August 2, 2017, **Marshall** and **Reed** discussed the pick-up of syrup from the Woodfield Pharmaceutical LLC manufacturing facility at 10863 Rockley Road in Houston (the Woodfield Pharmaceutical manufacturing facility).

k. On or about August 7, 2017, **Reed** procured 20 kilograms of Promethazine for the Marshall DTO.

l. On August 22, 2017, **Marshall** sold 24 one-pint bottles of red cough syrup to a cooperating witness in Beaumont, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

m. On August 23, 2017, coconspirators attempted to transport 20 one- pint bottles of red cough syrup to San Antonio, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

n.  On August 24, 2017, **Cheryl A. Anderson** (**Anderson**) attempted to transport 226 one-pint bottles of red cough syrup to San Antonio, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

o.  On October 21, 2017, a coconspirator used an automobile to transport 638 eight-ounce bottles of purple cough syrup in Freestone County, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

p.  On January 5, 2018, **Marshall** provided two bottles of red cough syrup as a "sample" for a cooperating witness in Houston, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

q.  On or about January 21, 2019, **Adam P. Runsdorf** (**Runsdorf**) terminated **Reed**'s employment with Woodfield.

r.  In or about late January 2019, **Marshall** and **Campbell** met with **Runsdorf** to discuss future business. **Runsdorf** hosted one of the meetings inside the Woodfield Pharmaceutical manufacturing facility in Houston, Texas.

s.  On May 24, 2019, **Brown** delivered counterfeit labels to **Campbell**.

t.  On August 27, 2019, **Maria Anzures-Camarena** (**Anzures-Camarena**) emailed **Campbell** to collect payments for **Runsdorf** from the Marshall DTO.

u. In or about October 2019, **Gina Acosta** (**Acosta**) procured Codeine, Dextromethorphan, and Pseudoephedrine for the Marshall DTO.

v. In or about early December 2019, **Marshall** and **Campbell** brought **Patel** a sample of Wockhardt Promethazine Syrup Plain (Wockhardt), and Patel reformulated the sample without its active ingredients.

w. On December 10, 2019, **Marshall** and **Campbell** met with **Patel** regarding the viscosity of the green syrup and **Patel** agreed to adjust the formulation.

x. In or about April 2020, **Runsdorf** met with Woodfield marketing executives to develop a plan for the **Marshall** DTO to expand the delivery of cough syrup.

y. On April 30, 2020, coconspirators used an automobile to transport 336 one-pint bottles of green cough syrup in Liberty County, Texas. The bottles bore counterfeit "Wockhardt Promethazine Syrup Plain" labels.

z. On or about May 28, 2020, **Jonathan Shaver** (**Shaver**) procured 40 fifty-five gallon drums for the Marshall DTO.

aa. On July 13-14, 2020, the **Marshall** DTO produced a video inside the Woodfield Pharmaceutical manufacturing facility.

bb. On July 16, 2020, **Runsdorf** directed **Acosta** to contact **Campbell** regarding $20,000 the Marshall DTO owed to **Runsdorf**.

cc. On July 31, 2020, **Acosta** contacted **Runsdorf** regarding his approval for the production of a batch of syrup for the Marshall DTO.

dd. On August 3, 2020, **Runsdorf** directed **Acosta** to send a $15,000 payment from the Marshall DTO to his office.

ee. On August 19, 2020, **Runsdorf** and **Campbell** exchange text messages regarding a delinquent payment and the Marshall DTO's need for additional bottle caps.

ff. On or about December 9, 2020, **Marshall** contacted **Runsdorf** regarding the labelling of cough syrup bottles at the Woodfield Pharmaceutical manufacturing facility.

gg. On December 15, 2020, and continuing into the morning of December 16, 2020, coconspirators inside the Woodfield Pharmaceutical manufacturing facility bottled and boxed cough syrup for distribution by the Marshall DTO.

hh. On December 17, 2020, **Runsdorf** directed **Acosta** to send a payment from the Marshall DTO to his office rather than his home

ii. On December 18, 2020, **Runsdorf** and **Marshall** text messaged each other regarding distribution issues related to the "green product."

jj. On January 21, 2021, Marshall and Runsdorf agreed on the production of a 250 gallon batch of "green product" for $7,500.

kk. On January 26, 2021, a coconspirator used an automobile to transport 11 bottles of red cough syrup and $11,191 in U.S. currency in Galveston County, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

ll.  On February 22, 2021, at approximately 12:33 p.m., **Marshall** hand-delivered an envelope containing $7,000 cash to **Gina Acosta** at the Woodfield Pharmaceutical manufacturing facility.

mm.  On February 22, 2021, at approximately 1:00 p.m., Woodfield employees staged 7 55-gallon drums of green cough syrup near the loading dock of the Woodfield Pharmaceutical manufacturing facility.

nn. On February 22, 2021, at approximately 4:30 p.m., a coconspirator driving a rental truck transported the drums to the Marshall DTO storage facility located at 5041 Spencer Highway in Pasadena, Texas.

All in violation of 18 U.S.C. § 371.

## Count Two

> Violation: 18 U.S.C. § 2320(a)(4)
> (Trafficking in Drugs With Counterfeit Mark)

30.    From in or about April 2014, the exact date being unknown to the Grand Jury, and continuing thereafter until in or about August 2021, the exact date being unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," a/k/a "Doc," **Tunji Campbell**, a/k/a "Michael Duke," a/k/a "Mike," **Cheryl A. Anderson**, **Ashley A. Rhea**, a/k/a "Ashley A. Johnson," **Chauntell D. Brown**, a/k/a "Juan Brown," **Willis Reed**, **Kalpen D. Patel**, **Jonathan R. Shaver**, **Gina Acosta**, and **Adam P. Runsdorf**, and **Maria Anzures-Camarena**, defendants, did intentionally traffic and attempt to traffic in a drug and knowingly use a counterfeit mark on and in connection with such drug.

In violation of 18 U.S.C. §§ 2320(a)(4) and 2.

## Count Three

Violation: 18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering)

31.     From in or about April 2014, and continuing through in or about August

2021, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas,

and elsewhere, **Byron A. Marshall**, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," a/k/a

"Doc," **Tunji Campbell**, a/k/a "Michael Duke," a/k/a "Mike," **Cheryl A. Anderson**,

a/k/a "Angela Thomas," **Ashley A. Rhea**, a/k/a "Ashley A. Johnson," **Chauntell D.**

**Brown**, a/k/a "Juan Brown," **Willis Reed**, **Kalpen D. Patel**, **Jonathan R. Shaver**, **Gina**

**Acosta**, **Adam P. Runsdorf**, and **Maria Anzures-Camarena**, defendants, along with

others, both known and unknown to the grand jury, did knowingly combine, conspire,

and agree with each other and with other persons known and unknown to the grand jury,

to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 1957,

that is:

a.     to knowingly conduct and attempt to conduct financial transactions
affecting interstate commerce and foreign commerce, which
transactions involved the proceeds of specified unlawful activity,
that is, conspiracy to traffic in counterfeit drugs, a violation of 18
U.S.C. § 2320, with the intent to promote the carrying on of
specified unlawful activity, and that while conducting and
attempting to conduct such financial transactions, knew that the
property involved in the financial transactions represented the
proceeds of some form of unlawful activity, in violation of 18 U.S.C.
§ 1956(a)(1)(A)(i);

b.     to knowingly conduct and attempt to conduct financial transactions
affecting interstate commerce and foreign commerce, which

transactions involved the proceeds of specified unlawful activity, that is, conspiracy to traffic in counterfeit drugs, a violation of 18 U.S.C. § 2320, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

c.      to knowingly engage and attempt to engage, in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, and such property having been derived from a specified unlawful activity, that is, conspiracy to traffic in counterfeit drugs, a violation of 18 U.S.C. § 2320, in violation of 18 U.S.C. § 1957.

All in violation of 18 U.S.C. § 1956(h).

## NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE

18 U.S.C. §§ 982(a)(1) and 2323

As a result of committing the offenses as alleged in this Indictment, defendants shall forfeit to the United States pursuant to 18 U.S.C. §§ 982(a)(1) and 2323 any and all property, real or personal: used or intended to be used in any manner or part to commit or facilitate the commission of the offense; involved in or traceable to property involved in the offense, including proceeds obtained directly or indirectly from the offense; any counterfeit materials; and the following:

### Real Property

(a) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, commonly known as 10863 Rockley Road, Houston, TX, 77099, further described in legal description as "A 2.6013 acre (113,315 square feet) tract out of Block 2,

Unrestricted Reserve "C" of Southwest Park, Section Five as recorded in Volume 266, Page 26 of the Map Records of Harris County, Texas and out of the Leo Roark Survey, Abstract No. 651, Houston, Harris County, Texas."

(b) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, commonly known as 3164 St. Annes Place, Boca Raton, Florida, 33496, Parcel ID No: 06-42-47-03-01-000-1170, further described in legal description as "Lot 117, Woodfield Country Club, according to the plat thereof, as recorded in Plat Book 54, Page 79, of the Public Records of Palm Beach County, Florida".

## Vehicle

(a) 2020 McLaren 720S, Vehicle Identification Number SBM 14FCA7LW004054;

## Jewelry

(a) Titanium Hublot Classic Fusion Chronograph Automatic watch with a black dial, black leather strap and the case and aftermarket bezel are set with round aftermarket diamonds, Serial #1351144;

(b) Titanium Hublot Classic Fusion Automatic watch with a black dial, black leather strap and the case and aftermarket bezel are set with round aftermarket diamonds, Serial #1470369;

(c) Black ion plated Movado Edge quartz watch with a black rubber strap, Serial# 14080244;

(d) Gold ion plated stainless steel Movado Bold quartz watch with a gold ion plated mesh band, Serial #15291334;

(e) 14 karat white gold box chain necklace, DEA Exhibit 134A; and

(f) 14 karat yellow gold diamond cut rope chain necklace, DEA Exhibit 134-B;

## Cash Proceeds

A sum of money equal to $52,736,000.00 in United States currency, and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by defendants as a result of the offenses alleged in this Indictment, for which the defendants are personally liable.

**Substitute Assets**

If any property subject to forfeiture, as a result of any act or omission by defendants:

(a)     cannot be located upon the exercise of due diligence;
(b)     has been transferred or sold to, or deposited with a third party;
(c)     has been placed beyond the jurisdiction of the court;
(d)     has been substantially diminished in value; or
(e)     has been commingled with other property which cannot be subdivided
        without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of

any other property of defendant up to the value of the above forfeitable property,

including but not limited to all property, both real and personal, owned by defendant.

By virtue of the commission of the felony offenses charged in this Indictment, any

and all interest defendants have in the above-described property is vested in the United

States and hereby forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1) and 18

U.S.C. § 2323.

A TRUE BILL

_____
GRAND JURY FOREPERSON

Indictment – Page  18

BRIT FEATHERSTON
UNITED STATES ATTORNEY


JOHN B. ROSS
Assistant United States Attorney

8/3/2022

Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:21-CR-112 |
| | § | (Judge Marcia Crone) |
| BYRON A. MARSHALL | § | |
| a/k/a "Robert Griffin" | § | |
| a/k/a "Dr. Griffin," a/k/a "Doc" (1) | § | |
| TUNJI CAMPBELL | § | |
| a/k/a "Michael Duke," a/k/a "Mike" (2) | § | |
| CHERYL A. ANDERSON | § | |
| a/k/a "Angela Thomas" (3) | § | |
| ASHLEY A. RHEA | § | |
| a/k/a Ashley A. Johnson (4) | § | |
| CHAUNTELL D. BROWN | § | |
| a/k/a "Juan Brown" (5) | § | |
| WILLIS REED (6) | § | |
| KALPEN D. PATEL (7) | § | |
| JONATHAN R. SHAVER (8) | § | |
| GINA ACOSTA (9) | § | |
| ADAM P. RUNSDORF (10) | § | |
| MARIA ANZURES-CAMARENA (11) | § | |

## NOTICE OF PENALTY

### Count One

Violation:                18 U.S.C. § 371

Penalty:                 Imprisonment of not more than five (5) years, a fine not to
                              exceed $250,000, or both imprisonment and a fine, and a
                              term of supervised release of not more than three (3)
                              years.

Special Assessment:    $ 100.00

### Count Two

Notice of Penalty-Page 1

Violation:              18 U.S.C. § 2320(a)(4) and (b)(3)(A)

Penalty:                Imprisonment of not more than twenty (20) years, a fine
                        not to exceed $5,000,000, or both imprisonment and a
                        fine, and a term of supervised release of not more than
                        three (3) years.

Special Assessment:     $ 100.00

## **Count Three**

Violation:              18 U.S.C. § 1956(h)

Penalty:                Imprisonment of not more than twenty (20) years, a fine
                        not to exceed $500,000, or twice the value of the property
                        involved in the transaction, whichever is greater, or both
                        imprisonment and a fine, and supervised release of not
                        more than 3 years.

Special Assessment:     $ 100.00